**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0386n.06
Filed: June 1, 2006

No. 05-1790

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Brenda Hatchett, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Health Care and Retirement Corporation of | ) | EASTERN DISTRICT OF MICHIGAN |
| America, an Ohio Corporation d/b/a | ) | |
| Heartland Health Care Center - Dearborn | ) | |
| Heights and also d/b/a HCR Manor Care, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT, MARTIN, and McKEAGUE, Circuit Judges.

**MERRITT, Circuit Judge.** Brenda Hatchett, an African American female, appeals the

district court's grant of summary judgment in favor of Defendant-Appellee Health Care and

Retirement Corporation of America, d/b/a Heartland Health Care Center - Dearborn Heights and

also d/b/a HCR Manor Care ("Heartland") on her claims of racial discrimination and retaliation.

Hatchett alleges that Heartland violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

*et seq.*, and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*, by:

(1) paying her less than similarly situated white employees; and (2) retaliating against her after she

expressed complaints of racially discriminatory treatment. For the reasons that follow, we affirm the judgment of the district court.

**I.**

Heartland is a skilled nursing facility located in Dearborn Heights, Michigan. Plaintiff Brenda Hatchett, a registered nurse and an African American female, applied for employment at Heartland on May 23, 2003. She applied for the position of nurse supervisor and stated on her employment application that her salary expectation was negotiable. Myrtle Powell, Heartland's human resources manager and also an African American female, offered Hatchett the position of midnight nurse manager at Heartland. Hatchett began her employment at Heartland on June 9, 2003, as midnight nurse manager. Her base pay rate at the time was $27.25 per hour; she was also paid an additional $2.00 per hour shift differential, bringing her total hourly pay rate to $29.25.

In early September 2003, Heartland hired Toni Morse, a Caucasian female, as the day shift nurse manager in Heartland's short-term rehabilitation unit. Morse's resume reflected that she had management experience at a skilled nursing facility prior to her employment at Heartland. Morse was hired at a base pay rate of $29.50 per hour.

Also in early September 2003, Heartland hired Leorea Heard, an African-American female, as the day shift nurse manager in Heartland's long-term care unit. Heard did not have management experience at a skilled nursing facility prior to her employment at Heartland. She was hired at a base pay rate of $27.50 per hour.

On January 7, 2004, Powell inadvertently left a five-page document, referred to as the "wage matrix," on a copy machine by the administration office. The wage matrix summarized the market

raises effective December 31, 2003, and listed the salaries of Heartland's employees. Hatchett claims that the wage matrix also contained handwritten notations of "C" and "B" beside various employees' names. She believes that these notations indicated the employee's race as Caucasian or Black. Hatchett discovered the wage matrix on the copy machine and made at least one copy of it. Upon discovering the wage matrix, Hatchett highlighted certain names and brought it to the attention of Jeff Harper, Heartland's regional human resources manager; Kyle Fassett, Heartland's facility administrator; and Rebecca Mazzoni, Heartland's administrative director of nursing. Hatchett questioned Fassett about the pay disparities between employees and the notations on the wage matrix. Fassett did not respond except to ask where Hatchett found the document.

As a result of Powell leaving the wage matrix on the copy machine and Hatchett making a copy of the document, both employees were suspended from work without pay, pending further investigation of the matter. On January 15, 2004, Hatchett received a written employee warning notice stating that she had violated work rules because she "failed to secure sensitive or confidential information found on copier. Copied confidential information w/o authorization. Mislead [sic] administrator re: dispensation of confidential information." (J.A. at 72.) Powell also received a similar employee warning notice. (J.A. at 76.)

Linda Neumann, Heartland's regional director of operations, conducted an investigation into the alleged pay disparities. Fassett justified the pay disparities among the nurse managers by explaining that: (1) the day shift nurse manager position in the short-term rehabilitation unit involved more demanding responsibilities; (2) the day shift nurse manager positions had been more difficult to fill; and (3) Morse had negotiated more effectively for a higher wage. Although

Neumann accepted this explanation, she instructed Fassett to give raises to Hatchett and Heard to compensate them at the same base pay rate as Morse. Neumann decided to raise Hatchett and Heard's salaries due to her concerns with instability in the nursing department and the potential for union organization. Although Fassett objected to giving raises to Hatchett and Heard, he "did what [his] boss instructed [him] to do" and "gave all the increases." (J.A. at 184-86.)

During all relevant times, Heartland was in a period of transition to a more "hands on" nursing model, which would allow for more licensed nurses to provide direct care and fewer administrative positions. This transition, known as the "M²" business model or "Medicare nursing model," resulted in the Michigan Department of Consumer and Industry Services issuing Heartland a license to increase the number of Medicare beds at Heartland from 68 to 103, an increase of more than sixty percent of resident beds available for short-term rehabilitation patients. In order to implement the M² business model, Fassett, Neumann, and Diana Dixon, Heartland's administrative director of nursing services, decided to eliminate the midnight nurse manager position and two day shift desk nurse positions.

On January 27, 2004, Fassett issued a letter to Hatchett indicating that the position of midnight nurse manager was being eliminated effective March 1, 2004. The letter stated that Hatchett was welcome to apply for open positions in the department. (J.A. at 77.) By letter dated February 12, 2004, Dixon advised Hatchett that she was ineligible to transfer to a different position because of "an active, serious disciplinary action" in her file. (J.A. at 78.) Hatchett was offered the position of nurse supervisor on the midnight shift because that position was replacing the midnight nurse manager position. Hatchett would not accept the nurse supervisor position because it "was

not a lateral position" and "she was too educated to take on that role." (J.A. at 159, 229.) Because she would not accept the nurse supervisor position, Hatchett's last day of employment with Heartland was February 29, 2004.

Hatchett filed a complaint regarding these incidents with the Michigan Department of Civil Rights and the U.S. Equal Employment Opportunity Commission ("EEOC"). On March 24, 2004, the EEOC issued a "right to sue" letter to Hatchett. Thereafter, Hatchett filed a complaint in the United States District Court for the Eastern District of Michigan, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* Specifically, Hatchett's complaint alleged disparate pay rates based on race and retaliation for engaging in protected activities.

Heartland then filed a motion for summary judgment, which the district court granted on May 6, 2005. The district court found that Hatchett: (1) failed to establish a *prima facie* case of race discrimination because she did not show that she was treated differently than similarly situated non-protected employees; and (2) failed to establish a *prima facie* case of retaliation because she did not show that there was a causal connection between the protected activity and the alleged adverse employment action. Accordingly, the district court entered judgment in favor of Heartland. This timely appeal followed.

## II.

### A. Standard of Review

We review *de novo* the district court's grant of summary judgment. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). Summary judgment is appropriate if "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, we view the evidence and draw all reasonable inferences from the facts in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We weigh the evidence not to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252.

### B. Discrimination

Both Title VII and the Elliott-Larsen Act make it unlawful for an employer to discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's race. *See* 42 U.S.C. § 2000e-2(a)(1); Mich. Comp. Laws § 37.2202(a). Where the plaintiff fails to present direct evidence of racial discrimination, the courts analyze Title VII and Elliott-Larsen Act cases under the *McDonnell Douglas* burden-shifting paradigm. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Singfield*, 389 F.3d at 561; *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003). Initially, the plaintiff must present evidence sufficient to establish a *prima facie* case of racial discrimination. *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). To establish a *prima facie* case of discrimination, a plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for the position or privilege; (3) suffered an adverse employment action; and (4) was

treated differently than similarly situated, non-protected employees. *See, e.g., Singfield*, 389 F.3d at 561; *Newman*, 266 F.3d at 405. If the plaintiff is able to make a *prima facie* showing of discrimination, she "in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citation omitted). The burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *See Newman*, 266 F.3d at 405. If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional discrimination. *See id.*

The parties do not dispute that Hatchett has established the first three elements of a *prima facie* case of racial discrimination. However, the parties vigorously dispute whether the plaintiff can establish that she was paid less than similarly situated employees outside of her protected class. Hatchett seeks to establish that she was treated differently than Toni Morse, a Caucasian female day shift nurse manager who received a higher base pay rate than Hatchett. The district court concluded that Hatchett was not similarly situated to Morse, who did not perform the same job functions as Hatchett, and thus plaintiff failed to identify a similarly situated employee outside the protected class receiving more favorable treatment.

As this Court first explained in *Mitchell v. Toledo Hospital*, when the plaintiff lacks direct evidence of discrimination, the plaintiff "must show that the 'comparables' are similarly-situated *in all respects*." 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). This Court further explained, in *Ercegovich v. Goodyear Tire & Rubber Co.*, that the plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to

be considered 'similarly-situated;'" rather, the plaintiff and the employee with whom the plaintiff seeks to compare herself "must be similar in 'all of the *relevant* aspects.'" 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). This means the plaintiff must "prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of [the non-minority] employees who he alleges were treated more favorably." *Pierce*, 40 F.3d at 802. Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated. *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (citing *Pierce*, 40 F.3d at 802). Applying the principles set forth in *Mitchell*, *Ercegovich*, and *Pierce*, we conclude that Hatchett was not similarly situated to Morse.

While both Hatchett and Morse are registered nurses and while they may have held nurse manager positions at Heartland, the record indicates that their job responsibilities were different. Hatchett's primary responsibilities as midnight nurse manager were supervising the staff of the midnight shift and completing a census of all the residents in the Heartland facility at midnight each night. As day shift nurse manager, Morse was responsible for the supervision of the short-term rehabilitation unit, which involved supervising a larger staff, addressing customer services issues, and frequent and numerous admissions and discharges. Unlike Hatchett, Morse was required to attend the morning standup meeting and to participate in other meetings and programs that occurred only during the day shift, including care conferences, Medicare meetings, quality assurance committee meetings, and quality of life programs. Whereas Hatchett was never encouraged to visit other shifts, Morse was highly encouraged to periodically visit other shifts.

The record also indicates that Hatchett and Morse had different levels of experience at the relevant time. While Hatchett did have a masters degree in nursing and prior managerial experience, her resume indicates that she had no prior experience with geriatrics or in a skilled nursing facility. (J.A. at 64.) Morse's resume indicates that she had extensive prior managerial experience, including more than three years of experience as a nurse manager at a skilled nursing facility. (J.A. at 67.) Under these circumstances, the relevant aspects of Hatchett's employment are not, as she claims, "nearly identical" to Morse's employment. Thus Hatchett and Morse are not "similarly situated" employees. *See, e.g., Hill v. Forum Health*, 2006 WL 162967, at *7 (6th Cir. Jan. 20, 2006) (comparing plaintiff's duties with the duties included in the non-protected employee's responsibilities and concluding that the two employees were not similarly situated); *Leadbetter*, 385 F.3d at 691-92 (finding that plaintiff was not similarly situated to non-protected employee with "superior experience"); *Campbell v. Hamilton County*, 23 Fed. Appx. 318, 326 (6th Cir. 2001) (concluding that differences in levels of experience established that two employees were not similarly situated); *Pierce*, 40 F.3d at 802 (considering distinctions in employment status and job responsibilities in determining whether two employees were similarly situated).

Plaintiff argues that she has presented sufficient evidence of discriminatory animus to satisfy her *prima facie* burden notwithstanding the absence of evidence that a similarly situated person outside the protected class received more favorable treatment. This Court has recognized that there may be cases where there is so much circumstantial evidence of discriminatory animus that the plaintiff's failure to establish the fourth element of the *McDonnell Douglas* burden-shifting paradigm is not fatal to her claim. *See Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 166

(6th Cir. 2004). To satisfy the *prima facie* burden, the evidence must "tend to eliminate the most common non-discriminatory reasons" for the adverse action and "raise an inference that the adverse action was motivated by discriminatory animus." *Id.* at 166-67. The circumstantial evidence that Hatchett has proffered does not fulfill these functions.

First, plaintiff points to the handwritten notations of "C" and "B" on the wage matrix left on the copy machine. At the outset, we note that plaintiff's observation of these notations is not otherwise corroborated. Plaintiff has not produced a copy of the wage matrix she describes. Kyle Fassett and Myrtle Powell testified in deposition that there were no handwritten notations on the wage matrix left on the copy machine. (J.A. at 181, 323.) Even assuming that such notations existed, the alleged notations are ambiguous in that we do not know for certain what the notations referred to. The ambiguity of the alleged notations greatly diminishes their value as evidence of discriminatory animus.

Second, plaintiff asserts that Fassett's refusal to compensate her at the same base pay rate as Morse demonstrates discriminatory animus. Simply put, the record does not support Hatchett's assertion. In his deposition testimony, Fassett explicitly stated that he followed the instructions of his superior and raised Hatchett's base pay rate, after which all three nurse managers "were making the same." (J.A. at 185-86.) Moreover, Linda Neumann testified in her deposition that she instructed Fassett to raise Hatchett's base pay rate, and she believed that Fassett complied with her instructions. (J.A. at 288-89.) Plaintiff presented no evidence that suggested that Fassett failed to raise her pay rate to correspond to Morse's pay rate. Accordingly, we conclude that plaintiff's proffered evidence is insufficient to support an inference of racial discrimination.

Even assuming that Hatchett had established a *prima facie* case of discrimination, her discrimination claim still would fail because Hatchett offered no evidence of pretext. If Hatchett had established a *prima facie* case of discrimination, the burden would shift to Heartland to offer a legitimate nondiscriminatory reason for the pay disparities among nurse managers. *Newman*, 266 F.3d at 405. Because Heartland articulated a legitimate nondiscriminatory reason for the pay disparities--that pay depends on a variety of factors, including education and experience, job responsibilities, and salary negotiations--Hatchett was then required to show that the proffered reason was pretextual by showing that it: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Hatchett did not present any such evidence. Accordingly, there is no basis for a jury to conclude that the employer's proffered reasons for the pay disparities are false and that the actual reason that Hatchett was paid less than Morse was due to Hatchett's race.

## C. Retaliation

Hatchett claims that Heartland retaliated against her after she raised a claim of discrimination. Due to her alleged opposition, she claims that she received an unwarranted disciplinary action that precluded her from transferring to a new position. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer had knowledge of her exercise of her protected rights; (3) she suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *See, e.g., Singfield*, 389 F.3d at 563; *Wade v. Knoxville Utils. Bd.*, 259 F.3d

452, 463 (6th Cir. 2001). The Elliott-Larsen Act, Mich. Comp. Laws § 37.2701(a), requires the plaintiff to demonstrate that: (1) she opposed violations of the Act or participated in an activity protected by the Act; and (2) her opposition or participation was a "significant factor" in the adverse employment action. *See Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999).

To establish a causal connection between the protected activity and the adverse employment action, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's protected activity is relevant to causation. *Id.*

Although the burden of establishing a *prima facie* case of retaliation is "not onerous," *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997), Hatchett has failed to meet it. Hatchett relies heavily on the timing of the "employee warning notice" at issue to demonstrate a causal connection between her alleged protected activity and the disciplinary action. However, this Court has held that temporal proximity alone is insufficient to establish a causal connection when there is compelling evidence to the contrary. *See Steiner v. Henderson*, 121 Fed. Appx. 622, 626 (6th Cir. 2005). The mere fact that Hatchett was disciplined one month after first complaining about the pay disparities among nurse managers does not establish a causal connection because Heartland has provided compelling alternate causal explanations for the employee warning notice's timing.

Heartland notes convincingly that Hatchett was disciplined after she copied sensitive employee information and failed to safeguard the documents. Plaintiff committed a serious breach of trust by copying the wage matrix even though she admittedly did not have authority to do so. At that time, plaintiff received an employee warning notice for failing to secure confidential information and for copying confidential information without authorization. Before issuing the warning notice, Fassett consulted with Neumann, Harper, and Mike Sheuy, a labor relations specialist, and all agreed that disciplinary action was appropriate. Thus the temporal proximity between Hatchett's allegations and the disciplinary action is insufficient to support an inference that Fassett's decision to take disciplinary action against the plaintiff was caused by her allegations of discrimination.

Hatchett also attempts to prove causation by showing that the discipline imposed was unwarranted. However, Hatchett presented no evidence to establish that she was not appropriately and properly disciplined, relying instead on bare allegations that discipline was unwarranted. Moreover, Hatchett presented no evidence that Fassett did not follow Heartland's discipline policy. In contrast, Heartland has produced evidence indicating that Fassett considered the recommendations of management and all of the relevant facts in deciding on the appropriate discipline.

Hatchett's argument is furthered weakened by evidence that Myrtle Powell was contemporaneously disciplined in the same manner for engaging in similar misconduct. The identical discipline imposed on Powell undermines any inference that the disciplinary action was motivated by retaliation for opposing discrimination. *See Moon v. Transp. Drivers, Inc.*, 836 F.2d

226, 230 (6th Cir. 1987) ("Proof that similarly situated nonprotestors were disciplined just as harshly for the same infraction suggests nonretaliation.").

While the *prima facie* case is "a burden easily met," *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987), a plaintiff must provide some evidence beyond temporal proximity to demonstrate a retaliatory causal connection, especially where a defendant provides compelling evidence of alternative causation. *See Nguyen*, 229 F.3d at 565-67; *Moon*, 836 F.2d at 229. Hatchett has failed to do so. As a result, she has not met the causality prong of her *prima facie* case.

### III.

For the foregoing reasons, we affirm the judgment of the district court.