**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0846n.06
Filed: November 17, 2006

Nos. 05-3467/3669

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LEE ARNOLD, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| MAROUS BROTHERS CONSTRUCTION, | ) | DISTRICT OF OHIO |
| INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:  GILMAN and GRIFFIN, Circuit Judges; and HEYBURN**, **Chief District Judge**[*]

JOHN G. HEYBURN II, Chief District Judge.  Appellant, Lee Arnold, Jr., proceeding pro se, appeals a district court judgment dismissing his employment discrimination action filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Arnold, an African-American, was employed by Appellee, Marous Brothers Construction, Inc., from June 3, 2002, until June 6, 2002, as a non-union employee.  He alleged that he was constructively discharged due to his race and was subjected to a hostile work environment.

Upon the completion of discovery, the district court granted the defendant's motion for summary judgment.  On somewhat different grounds than those articulated by the district court, we affirm.

---

[*] The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

I.

In reviewing a grant of summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). Therefore, although the Appellee disputes various aspects of this account, we must accept Arnold's version as true.

According to Arnold, he was hired as a non-union clean-up person, but involuntarily became a "PAR laborer," *i.e.,* a non-union general laborer hired from the area surrounding a job site. On what became his last day, Arnold and another African-American man, Albert Jones, were instructed to load cabinets onto a crane from the fifth floor of a building and then run down the stairs to unload the crane. Arnold refused this request because he felt additional help was necessary. The crane operator, Dennis Vargo, allegedly swore at him, saying "I don't know what the f*** is wrong with you people." Vargo reported Arnold's refusal to management. Both were told to report to the office.

At the office, Vargo allegedly said "I don't know what the f*** this guy['s] problem is." Arnold told Vargo that he did not appreciate being talked to in that manner. Arnold says that six people then formed a semicircle around him, while two others remained nearby on the steps of a trailer. The laborer steward, Daniel Ramser, addressed him and asked whether he was refusing to do a job. Arnold replied that he refused to be treated like a mule. Ramser then asked Arnold if he wanted to quit. Arnold says that he felt in danger of being assaulted. Due to these perceived threats and intimidation, Arnold said "yes," and left the premises unharmed. Two white men

from the existing union workforce were then assigned to the task.

Thereafter, Arnold filed his federal court action alleging racial discrimination and hostile work environment. After completion of discovery, the district court sustained Appellee's motion for summary judgment. This appeal followed.

II.

This court's review of a grant of summary judgment is de novo. *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Harrow Prods., Inc.*, 64 F.3d at 1019. The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its claim in order to defeat the defendant's motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Am. Acad. of Ophthalmology, Inc. v. Sullivan*, 998 F.2d 377, 382 (6th Cir. 1993). The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could

reasonably find for the plaintiff.  *See Anderson*, 477 U.S. at 252.

III.

We must first consider whether Arnold presented any direct evidence that the actions taken toward him were the result of a racial animus.  *See Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 561 (6th Cir. 2004), *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  The district court found no such direct evidence.  For the following reasons, we agree.

The district court determined that Arnold's "ambiguous reference to 'you people' by Mr. Vargo and Mr. Ramser's reference to Mr. Arnold as 'cuz' . . . are similar in nature to the comments analyzed by the *Singfield* court and, analogously, are not examples of direct evidence." *Arnold v. Marous Bros. Constr.*, No. 1:03 CV 1761, slip op. at 6-7 (N.D. Ohio Feb. 3, 2005).  Ours is a closer case than *Singfield* because Mr. Vargo made the reference directly in relation to the events leading to Arnold's dismissal.  However, that does not supply more direct evidence of racial animus.  Our case is more like *Johnson v. Kroger Co.*, 319 F.3d 858 (6th Cir. 2003), where a panel of this Circuit held that "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* at 865.

Here, to conclude that racial animus at least in part motivated Arnold's dismissal would require the inferential step of "concluding that because [Vargo] held this belief, he would want to have [Arnold's] employment terminated." *Id.*  This falls short of direct evidence of racial

animus.

IV.

The next series of questions concern whether Arnold successfully established a prima

facie case of discrimination. To establish a prima facie case of racial discrimination, Arnold

must show that (1) he is a member of a protected class, (2) he was subjected to an adverse

employment action, (3) he was qualified, and (4) he was treated differently than similarly situated

non-minority employees for the same or similar conduct. *McClain v. NorthWest Cmty. Corr.*

*Ctr.*, 440 F.3d 320, 332 (6th Cir. 2006).

The district court found that Arnold was not constructively discharged. However, Arnold

is not arguing that he left work because of difficult or intolerable work conditions. That would

be an insufficient basis to claim constructive discharge. *See Smith v. Henderson*, 376 F.3d 529,

534 (6th Cir. 2004). Rather, Arnold says that he quit or was constructively discharged based

upon threats and intimidation. The answer to this question is certainly one upon which

reasonable persons who were not present as events unfolded could disagree. In other words, the

facts are open to the interpretation that Arnold left work involuntarily. At the very least these

facts are subject to dispute and should not have been decided on a summary basis. For our

purposes, we must therefore assume that Arnold was constructively discharged.

The district court also determined that Arnold lacked evidence that he was replaced by

persons outside his protected class or that similarly situated non-protected employees were

treated differently. The evidence supports this conclusion. After Arnold left the job site, the

evidence is that two existing union employees were called upon to perform Arnold's job for the remainder of the day. These workers were not hired to replace Arnold. To establish a prima facie case of discrimination Arnold must show that he was replaced by or treated differently than similarly situated non-protected workers. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1247 (6th Cir. 1995). The record does not support such a conclusion and, thus, cannot support the required inference of discrimination.

Therefore, for slightly different reasons than the district court, we conclude that Arnold failed to establish a prima facie case.

V.

Even were Arnold to state a prima facie case, his claim could not proceed. In those circumstances, the evidentiary burden would shift to the employer to provide a legitimate non-discriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). Although the district court did not rule on this particular issue, it did make an extensive recitation of facts, and both sides addressed the issue on appeal. If Arnold was forced to quit his job, Appellee's reasons for forcing such action are clearly evident. Appellee challenged Arnold about his intentions of performing the tasks demanded of him. By its actions, Appellee clearly placed Arnold on notice that it required him to follow the orders of his supervisors. By his action, Arnold declined.[1]

---

[1] Arnold argues that he was not declining to do the work, but was asking only for help in doing it. Unfortunately, the effect is the same; he refused a work order.

From Appellee's viewpoint, Arnold should either have done the work requested; otherwise, he had no place on the job site.

Once the employer articulates such a showing of a legitimate, non-discriminatory reason for an employment decision, the burden shifts back to the plaintiff to show pretext. The plaintiff is required to show either: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Here, Arnold acknowledges that he refused a work order on the job. This court has confirmed that insubordination can constitute legitimate reasons for termination. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). We find no evidence that Appellee's actions were a mere pretext or subterfuge, or that they were not based upon a reasonable belief in Arnold's refusal to follow orders. Moreover, Arnold presents no evidence that Appellee has treated other similarly situated persons differently, *i.e.*, giving white employees another opportunity after declining to follow orders.

Consequently, no evidence supports a finding that Appellee's stated reasons for forcing Arnold's termination were a mere pretext to mask its racial animus. For these additional reasons, we affirm the decision of the district court.

VI.

Arnold also asserted a hostile work environment claim. In such a case, an employee must show that: (1) the employee is a member of a protected class; (2) the employee was subject to

unwelcome harassment; (3) the harassment was based on the employee's protected status; (4) the harassment created a hostile work environment; and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999). In support of his claim, Arnold relies upon the comments of Vargo and Ramser and being surrounded at the office meeting.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive. *Id.* at 21-22. Teasing and offhand comments, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.

The behavior that Arnold found objectionable was limited in scope and in time. Arnold

even conceded that he did not have any trouble before his final afternoon at Marous Brothers. While Vargo's and Ramser's comments could be construed as offensive utterances, they were insufficiently abrasive or extensive to create a hostile work environment. The presence of other employees, even giving the appearance of surrounding him, without more aggressive or threatening acts, falls far short of evidence that we have found necessary to support a hostile work environment claim.

We affirm.