NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1188n.06

**No. 11-5238**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MARANDA TIBBS, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | |
| | ) | ***Nov 20, 2012*** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| CALVARY UNITED METHODIST CHURCH, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| Defendant-Appellee. | ) | DISTRICT OF TENNESSEE |
| | ) | |

BEFORE: BOGGS and GRIFFIN, Circuit Judges; and BARZILAY, Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff-appellant Maranda Tibbs filed this action against her former employer, defendant-appellee Calvary United Methodist Church ("Calvary"), alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") and race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). Tibbs appeals the district court's grant of summary judgment in favor of Calvary. For the reasons set forth below, we affirm.

I.

Maranda Tibbs is an African-American woman who worked as an assistant teacher at Calvary's Young Children's School ("YCS") from March of 1989 until her discharge on July 29,

_____

[*]The Honorable Judith M. Barzilay, Senior Judge, United States Court of International Trade, sitting by designation.

2008. In November 2007, Calvary hired Sharon Golden, a Caucasian, as the director of the YCS and instructed her to make changes in the program for the 2008-2009 school year, including rearranging teacher assignments to conform with the applicable state and federal accreditation and licensing standards. Although the YCS had been using a system of team teaching for some time, the 2008-2009 standards required that each classroom have one lead teacher who had a Child Development Associate certification, an associate's degree, or a college degree, and one assistant teacher (who was not required to hold a degree).

When Golden began her tenure, there were two classrooms that did not meet the 2008-2009 standards—one was Tibbs's classroom in the nursery. During the 2007-2008 school year, Tibbs, who was not qualified to be a lead teacher for lack of the requisite degree, taught with Linda Short, who also was not qualified as a lead teacher. Because neither Tibbs nor Short were lead teachers (nor eligible to be one), Golden decided to reassign them to different classrooms.

In March 2008, Golden discussed her proposed changes in classroom assignments for the 2008-2009 school year with the staff. Tibbs expressed her preference to continue working with Short in the nursery, but because this was not an option, Golden arranged for Tibbs to work with Kimberly Hommel, a lead teacher, in the four-year-old's classroom. Tibbs states that Golden justified the rearrangement by telling her that working with older students would be "easier on your back." Tibbs further testified that Golden said that "because of my age and I was older, it would be less bending and lifting" and that "the younger teachers probably ha[ve] got more energy and [are] more . . . flexible working with younger children." Golden denies making those statements, and

Tibbs does not dispute that she took time off of work in early 2008 due to a non-work-related back injury.

In July 2008, due to a drop in enrollment numbers, Golden determined that there were not enough four-year-olds to comprise a class for the 2008-2009 school year. She ultimately decided to reassign Tibbs and Hommel to a newly-created class for two-year-olds. On July 29, she and assistant director Jennifer Johnson met with Tibbs and Hommel, who were not pleased with the reassignment, to discuss the switch. The parties dispute what happened at the meeting. Golden testified that Tibbs became upset at the reassignment, yelled at her, and left the meeting before it concluded. Johnson and Hommel said Tibbs spoke loudly during the meeting and expressed anger and hurt. Golden viewed Tibbs's behavior as insubordinate and inappropriate. Tibbs alleges to the contrary, testifying that Golden, in a raised and angry voice, said disparaging things about Tibbs's education and nature. Tibbs testified that she was not disrespectful, but admitted that she became upset, started crying, and left the meeting before its conclusion.

Another teacher, Hedy Morrison, who was in an adjoining room and overheard part of the meeting, testified that she heard Golden yell at Tibbs and pound on her desk. While noting that both Golden and Tibbs have "loud voices" and that the discussion was "heated," Morrison testified that she did not hear Tibbs say anything insubordinate or disrespectful, but she heard Tibbs crying. Tibbs admits that Morrison did not hear Golden make any comments about Tibbs's age or race during the meeting and that there is nothing in Morrison's statement to indicate that Tibbs's age or race played a part in her subsequent termination.

After Golden concluded the meeting in Tibbs's absence, she immediately conferred with assistant director Johnson, YCS attorney Chris Anderson, senior pastor Peter Van Eys and YCS personnel chair Leslie Calvert, about Tibbs's behavior. Golden sought and ultimately obtained permission to fire Tibbs for insubordination. Later that day, Golden, Calvert, and Johnson told Tibbs she was terminated because of her behavior during the meeting. At the time of her discharge, Tibbs was 51 years old and was one of four African-American employees at Calvary. Calvary replaced her with a younger, Caucasian woman.

Tibbs filed the present action against Calvary, alleging age discrimination in violation of the ADEA, and race discrimination contrary to Title VII. Calvary moved for summary judgment. The district court, finding no direct evidence of discrimination under either claim, applied the *McDonnell Douglas* burden-shifting framework to both claims and, assuming that Tibbs established prima facie cases, held that Calvary satisfied its burden of articulating a legitimate nondiscriminatory reason for Tibbs's termination—perceived insubordination towards Golden, her supervisor. The district court further determined that Tibbs failed to come forward with sufficient age or race-based evidence from which a reasonable jury might reject Calvary's stated reason as pretextual. Tibbs now appeals the district court's order of summary judgment in favor of Calvary. The Equal Employment Opportunity Commission ("EEOC") filed an amicus brief in support of Tibbs's Title VII claim.

II.

We review de novo a district court's grant of summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When

determining whether the movant has met this burden, we view the evidence in the light most

favorable to the nonmoving party. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d

854, 861 (6th Cir. 2007).

III.

A.

Tibbs argues that the district court erred in concluding that she did not offer any direct

evidence of age discrimination. We disagree.

The ADEA prohibits employers from discriminating "against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623(a). An aggrieved employee may obtain relief under the ADEA if the employee can

prove by a preponderance of the evidence that age was the "but-for" cause of the challenged

employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "An employee can

establish an age discrimination case by either direct or circumstantial evidence." *Martin v. Toledo*

*Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion

that unlawful discrimination was at least a motivating factor in the employer's actions." *Provenzano*

*v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011) (citation and internal quotation marks

omitted). Direct evidence of discrimination does not require a factfinder to draw any inferences in

order to conclude that the challenged employment action was motivated, at least in part, by unlawful discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). In other words, "[d]irect evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). "Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005).

Tibbs relies on Golden's March 2008 statements as the purported direct evidence in this case. She states that Golden expressed concern that "because of [Tibbs's] age and [she] was older, it would be less bending and lifting" to work with older children and that "the younger teachers probably ha[ve] got more energy and [are] more . . . flexible working with younger children." Those ambiguous statements, which allegedly occurred four months before her termination, are not direct evidence of age discrimination. Assuming Golden made the statements as Tibbs claims, she was speaking in connection only with classroom assignments; they are not temporally connected with Tibbs's dismissal or the reasons for that dismissal. The statements are also ambiguous in that they address Tibbs's age and abilities in the context of her recent back issues and do not explicitly demonstrate discriminatory prejudice based upon her age. Golden's acknowledgment of Tibbs's individualized circumstances are legitimate workplace concerns, not "blatant remarks" whose intent means nothing other than to discriminate on the basis of age. Since Golden's statements were

unrelated to the challenged employment action, and an inference is required to link the ambiguous statements to Tibbs's dismissal, they do not constitute direct evidence of age discrimination.

B.

Tibbs next argues that she has presented enough circumstantial evidence of age discrimination to survive summary judgment. In particular, Tibbs maintains that there is sufficient evidence to establish that she did not act insubordinately during the July 29, 2008, meeting, and, therefore, a reasonable jury could reject Calvary's alleged nondiscriminatory reason for terminating her as a pretext for age discrimination. Calvary, conceding that Tibbs has established a prima facie case of age discrimination, maintains that Tibbs has not presented sufficient age-based evidence to reject its nondiscriminatory reason for her termination. We agree with Calvary.

Under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), if an aggrieved employee cannot prove discriminatory intent by direct evidence, the employee may do so by making a prima facie case of age discrimination through circumstantial evidence. *See Martin*, 548 F.3d at 410. Once a prima facie case has been established, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. "Once the defendant meets this burden, the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation" as pretextual. *Id*. at 410–11 (citation and internal quotation marks omitted).

Although Calvary concedes that Tibbs has established a prima facie case, it has articulated a legitimate, nondiscriminatory reason for Tibbs's termination: insubordination and inappropriate

behavior.  We have previously confirmed that "insubordination can constitute legitimate reasons for termination."  *Arnold v. Marous Bros. Constr., Inc.*, 211 F. App'x 377, 381 (6th Cir. 2006) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994); *see also Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 406 (6th Cir. 2008).  Calvary supports its proffered reason by presenting Golden's testimony that Tibbs raised her voice and walked out of the meeting before it was concluded—admissible evidence which, if believed, would support a finding that the termination was not based upon Tibbs's age.  The burden of production now shifts back to Tibbs to produce sufficient evidence demonstrating that Calvary's proffered reason was pretextual.

Tibbs may establish pretext by showing that Calvary's stated reason (1) has no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to warrant her dismissal.  *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012).  Here, Tibbs seeks to demonstrate pretext by means of the first method—no basis in fact—which is essentially an attack on the credibility of Calvary's reason and "consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual." *Id*. at 285 (citation and internal quotation marks omitted).  In this regard, although Tibbs denies being insubordinate and offers corroborating testimony of a third party (Morrison), who admittedly heard only part of the meeting, she does not dispute that she left the "heated" meeting early without her supervisor's permission.  This type of behavior, whether truly insubordinate or just inappropriate, is enough to justify Calvary's termination of Tibbs's at-will employment.  Tibbs's subjective belief that she was not insubordinate is insufficient to rebut

Calvary's nondiscriminatory reason. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."). Accordingly, Tibbs has failed to establish a genuine issue of material fact on the pretext issue.

We further find that the "honest belief rule" protects Calvary's termination decision. Under this rule, if an employer demonstrates an honest belief in its proffered reason for the adverse employment action, the inference of pretext is not warranted. *Seeger*, 681 F.3d at 285. We have previously explained that

> an employer's proffered reason is considered honestly held where the employer can establish it reasonably reli[ed] on particularized facts that were before it at the time the decision was made. Thereafter, the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held. An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact.

*Id.* (citation and internal quotation marks omitted). Moreover, so long as the employer has established its honest belief, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id*. at 286 (citation and internal quotation marks omitted).

Here, Calvary made its termination decision based on particularized facts. Golden personally observed behavior she believed was insubordinate and inappropriate. Consequently, she consulted Johnson, Anderson, Van Eys, and Calvert in obtaining permission to terminate Tibbs. Although Tibbs continues to assert she was not, as a factual matter, insubordinate, "arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's

reasons for a decision are *right* but whether the employer's description of its reasons is *honest*." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998) (citation and internal quotation marks omitted). The test is whether a reasonable jury could find that Calvary "failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process unworthy of credence . . . ." *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (citation and internal quotation marks omitted). Calvary's decision to fire Tibbs was not so questionable that it might be deemed unworthy of credence. The record does not support that conclusion. Instead, the record suggests that Calvary decided to terminate Tibbs for her conduct during the meeting, conduct that Calvary perceived to be insubordinate and ultimately unacceptable. Whether it was truly an act of insubordination is not the issue. Although it is unfortunate, Calvary's termination of Tibbs reflects a reasonably informed and considered decision. We therefore find that Tibbs has not refuted Calvary's honest belief that it terminated her for insubordination and affirm the district court's grant of summary judgment in Calvary's favor on the ADEA claim.

C.

Next, Tibbs and the EEOC argue that she has presented enough circumstantial evidence of race discrimination to present her Title VII claim to the factfinder.[1] We disagree.

Title VII prohibits employers from discriminating against employees on the basis of race. 42 U.S.C. § 2000e-2(a)(1). This court applies the same *McDonnell Douglas* framework when analyzing Title VII racial discrimination claims based on circumstantial evidence as it does for the

---

[1]Tibbs presents no direct evidence of racial discrimination.

ADEA. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). A plaintiff establishes a prima facie case of race discrimination under Title VII by proving "(1) membership in a protected class; (2) that she suffered an adverse action; (3) that she was qualified for the position; and (4) that she was replaced by, or treated differently than, someone outside the protected class." *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 828 (6th Cir. 2000).

Calvary concedes that Tibbs has established all but the fourth element of the prima facie case. It attacks the final element by arguing Tibbs was not treated differently than any employees outside the protected class and no different than other employees. We agree with Tibbs that the fourth element is stated in the disjunctive, so that a plaintiff may establish that element either by proof that she was replaced by someone outside the protected class, *or* was treated differently. Here, Calvary does not dispute it replaced Tibbs with a Caucasian female. Tibbs has therefore established the prima facie case, and the burden now shifts to Calvary to articulate a legitimate, nondiscriminatory reason for her termination. Consistent with their respective positions on the ADEA claim, Calvary asserts it terminated Tibbs because of insubordination, and Tibbs maintains this reason is a pretext for race discrimination.

As with her age discrimination claim, we find that Tibbs has failed to produce sufficient evidence from which a reasonable jury could reject Calvary's nondiscriminatory reason as pretextual. Tibbs has failed to create a genuine issue of material fact on the pretext issue because she does not deny that she left the "heated" meeting early, and her belief that she was not insubordinate is

irrelevant in the analysis. In addition, she has failed to genuinely dispute Calvary's honest belief in terminating her for insubordination.

Moreover, Tibbs's exhaustive comparisons of her alleged behavior during the meeting, for which she was fired, to Caucasian co-workers' alleged misconduct, for which they were not fired or disciplined, do not create a genuine issue of material fact on pretext. In reviewing such an argument, we focus on whether the employees outside the protected class were similarly situated in all relevant aspects, and whether the proffers of similar misconduct are analogous in terms of severity and commonality. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 348–50 (6th Cir. 2012).

The proffered comparisons here are unpersuasive as the circumstances and seriousness of these other incidents varied considerably, and the Caucasian co-workers were not similarly situated to Tibbs. She offers no evidence that Calvary did not discipline Caucasian employees who engaged in severe misconduct analogous to arguing with a supervisor in a loud, "heated" meeting and walking out of that meeting before the supervisor called it to a close. She also offers no proof that Calvary employees commonly treated supervisors in such a manner or that supervisors routinely tolerated such behavior. Further, we reject Tibbs's proffer of three memoranda written by Golden which purportedly show that Calvary did not terminate Caucasian employees for engaging in similar insubordinate conduct. Golden penned those memos seven months to two years *after* Tibbs's termination; they are not temporally connected to events in this case and are irrelevant as to Golden's motive for discharging Tibbs. Accordingly, Calvary was entitled to summary judgment on this claim.

D.

Tibbs's final argument is that the district court erred in not considering her "mixed-motive" claim of racial discrimination when granting summary judgment to Calvary. Although the district court did not specifically address her mixed-motive claim in its written memorandum, it necessarily disposed of this claim by holding that Tibbs "produced no evidence that Defendant's decision to terminate her was in *any way* based on her race . . . ." (Emphasis added.) We find no error in the district court's conclusion.

Title VII prohibits adverse employment actions if the employee's race was a motivating factor, even if other legitimate factors also motivated the employer's decision. 42 U.S.C. § 2000e-2(m). To avoid summary judgment on a mixed-motive race discrimination claim, a plaintiff must produce sufficient direct or circumstantial evidence from which a reasonable jury could conclude that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race was a motivating factor for the defendant's adverse employment action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008). The plaintiff's burden of production "is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim." *Id.*

Tibbs's proofs do not allow a reasonable jury to conclude that Calvary considered her race a motivating factor in its decision to discharge her for insubordination. The record contains no direct evidence of racial discrimination. From the scintilla of circumstantial evidence offered—isolated comparisons of how Calvary allegedly treated Tibbs differently from Caucasian co-workers—a

reasonable jury could not draw the inference that Calvary considered her race a motivating factor in its termination decision. Differences in requirements related to doctors' notes or disciplinary decisions for minor workplace offenses underscore the discretionary nature of administrative decision making. A factfinder could not reasonably construe those differences as proof that it was more likely than not that Tibbs's race partly motivated Calvary to fire a twenty-year veteran of its institution. Relatedly, as with the single-motive claim, we do not consider the memoranda that Golden wrote seven months to two years after Tibbs was terminated because the comparators were not similarly situated in that there is no temporal nexus to the events here and the misconduct differed from Tibbs's actions in this case. We therefore affirm the district court's grant of summary judgment in Calvary's favor.

IV.

For the foregoing reasons, we affirm the judgment of the district court.