**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0829n.06

**No. 13-4200**

<table>
<tr><td>

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

</td><td>

**FILED**
Nov 03, 2014
DEBORAH S. HUNT, Clerk

</td></tr>
</table>

|  |  |  |
|---|---|---|
| GARY FRANKS, | ) | |
|  | ) | |
|    Plaintiff-Appellant, | ) | |
|  | ) | |
|        v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| VILLAGE OF BOLIVAR, and REBECCA | ) | COURT FOR THE NORTHERN |
| HUBBLE, in her official and individual capacities, | ) | DISTRICT OF OHIO |
|  | ) | |
|    Defendants-Appellees. | ) | |
|  | ) | |
|  | ) | |

BEFORE: COOK and GRIFFIN, Circuit Judges; and RICE, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Gary Franks brought this action against his former employer, defendant Village of Bolivar, Ohio, and its Mayor, defendant Rebecca Hubble, following his termination as the Village's Street and Water Supervisor. The district court granted summary judgment in favor of defendants on all of plaintiff's claims. Franks appeals only the district court's ruling regarding his Ohio age discrimination claim. For the reasons set forth, we affirm.

I.

In 1977, Franks was appointed as the Street and Water Supervisor for the Village of Bolivar. At the time of his termination in 2011, Franks was the oldest employee of the village.

---

[*]The Honorable Walter Herbert Rice, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

Rebecca Hubble became the Mayor of Bolivar in February 2010. The parties agree that before Hubble's assumption of office, Franks had never been disciplined. However, after Hubble took office, she and Franks clashed, and Franks was disciplined several times.

The first incident resulting in discipline arose from Franks permitting his fourteen-year-old grandson to use a village-owned lawn mower. Mayor Hubble asked Franks why his grandson was operating the mower. Franks told Hubble that his grandson was "helping us mow" and that he—Franks— was paying his grandson with his personal funds. Hubble was concerned that this arrangement was not legal, and, after speaking with the village's attorney, directed Franks to stop permitting his grandson to use the mower. According to Mayor Hubble, after she gave Franks this instruction, he said "I'm going to pretend like I didn't hear that." Franks denies making this statement. Hubble told Franks that if his grandson continued to operate the mower, Franks would be given a disciplinary warning. Subsequently, Mayor Hubble was informed that a village resident had called the village offices saying that she had seen Franks' grandson on the mower again. Thereafter, Mayor Hubble gave Franks a verbal warning.

The second incident involved an altercation between Franks and village resident Frank Lunsford. On June 21, 2010, Hubble met Lunsford in her office with the village police chief, Randall Haugh. Towards the end of the meeting, Lunsford commented to the Mayor that he had seen Franks sitting in his truck, not working, for "several hours" at a time; Lunsford opined that Franks was not performing his duties during working hours. Franks overheard Lunsford's comments, entered Hubble's office, and accused Lunsford of lying. Hubble says that Franks pointed at Lunsford while accusing him of lying. According to Haugh, Franks was "spitting mad" and red in the face while "screaming" at Lunsford. Franks' son, who also overheard the incident, allegedly said that his dad was "a little bit loud." Franks, however, testified that,

although he called Lunsford a liar, he did so politely. Franks admits that the day after the Lunsford incident, Hubble came to his office and "handed me a reprimand for insubordination." The written reprimand states "[t]his verbal warning is given to Gary E. Franks because of actions on June 21, 2010 while talking with Mr. Frank Lundsford [sic]."

The third incident was a confrontation between Franks and a school bus driver on August 31, 2010. The bus driver had attended a village finance committee meeting to discuss low-hanging branches that blocked his view of the roads while driving. After the meeting, Franks approached the bus driver and asked him which trees needed trimming. A witness who observed the incident thought that Franks "had a rather nasty voice when he confronted" the bus driver. The incident was captured on a police cruiser dashcam. Hubble issued Franks a written warning as a result of this altercation. The written warning states that it was issued "because of actions taken . . . at the intermediate school bus area and per council request." The basis for the warning was "insubordination, including but not limited to, refusal or failure to perform work assignment and the use of profane or abusive language to supervisors, employees or officers of the village, and absence from duty without notice or permission of the supervisor."

The fourth incident concerned Franks' actions at a finance committee meeting at which members of the council discussed whether to implement a time clock. According to Hubble, Franks became "very, very upset." Councilmember Maria App similarly testified that Franks became "very agitated that he would have to resort to a time clock." However, Franks testified that he was simply asking questions about who would clock him out if he was unable to use the time clock. Franks admitted at his deposition that he "might have been animated" during this meeting, and that the committee members "probably" thought he was angry. Mayor Hubble

issued Franks another written warning—this one regarding his conduct at the finance committee meeting, at the behest of the council.

In December 2010, Mayor Hubble held a special council meeting to discuss retirement options for Franks. According to Councilmember App, the council's "whole goal" at the meeting "was to either . . . bring things into compliance . . . or, if that didn't happen, give him an option, either retire [or] resign." Hubble testified that "it didn't matter to me whether he retired or not." Franks testified that Hubble strongly encouraged him to retire on multiple occasions. Specifically, Franks stated that Hubble "offered [Franks] a big party if [Franks] would retire." Additionally, Franks testified that Hubble said that Franks "could go work on the farm" if he retired. Further, Hubble told Franks "she had big projects that she wanted to accomplish and she didn't think [Franks] could do those." On February 11, 2011, the council voted to offer Franks a retirement package. Apparently, Franks did not take the package because on February 21, 2011, the council voted to terminate Franks. According to Councilmember App, the council decided to fire Franks because "he had an attitude, and [because of] insubordination" towards Hubble.

On March 9, 2011, Franks filed the instant action in Ohio state court, alleging five claims. Thereafter, defendants removed the case to the district court and filed a motion for summary judgment, which was granted by the district court. Franks now appeals; the only issue Franks raises on appeal is his state law age discrimination claim.

II.

We review *de novo* a district court's summary judgment determination. *Med. Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). Summary judgment is appropriate if, taking the evidence in the light most favorable to the non-moving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

"no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A "mere scintilla" of evidence, however, is not enough for the non-moving party to withstand summary judgment. *Id.*

### III.

Ohio Revised Code § 4112.02(A) makes it an unlawful discriminatory practice

> [f]or any employer, because of the . . . age . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

In turn, Ohio Revised Code § 4112.14(A) provides that

> [n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

The Ohio Supreme Court has held that

> absent direct evidence, to establish a prima facie [case of age discrimination] a plaintiff must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class.

*Coryell v. Bank One Trust Co.*, 803 N.E.2d 781, 784–85 (Ohio 2004) (citation and quotation marks omitted). "If a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to provide some legitimate, nondiscriminatory reason for the action taken." *Peters v. Rock-Tenn Co.*, 903 N.E.2d 1256, 1260 (Ohio Ct. App. 2008) (citation omitted). The employer's burden at this stage is "one of production, not persuasion." *Ohio Univ. v. Ohio Civil Rights Comm'n*, 887 N.E.2d 403, 424 (Ohio Ct. App. 2008) (citation

omitted). "If the employer submits admissible evidence that taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has met its burden of production." *Id.* at 423 (citation and quotation marks omitted). "If the employer establishes a nondiscriminatory reason, the employee then bears the burden of showing that the employer's proffered reason was a pretext for impermissible discrimination." *Peters*, 903 N.E.2d at 1260 (citation omitted). "To show pretext, the employee must prove that the employer's reason was false *and* that discrimination was the real reason for the discharge." *Ohio Univ.*, 887 N.E.2d at 424 (citation omitted, emphasis added).

When applying the above framework, courts must be mindful that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citation omitted). That is because "[t]he ultimate inquiry in an age-discrimination case is whether an employee was discharged on account of age." *Id.* at 422 (citation omitted).

Here, the parties agree that Franks established a prima facie case of age discrimination. The parties disagree regarding whether the stated reasons for Franks' termination were legitimate, nondiscriminatory reasons for termination, or merely a pretext for discrimination.

Defendants satisfied their burden of producing evidence that Franks was terminated for nondiscriminatory reasons. Defendants cite multiple instances in which Franks behaved inappropriately and unprofessionally. First, Franks permitted his fourteen-year-old grandson to mow grass with the village's lawnmower and was disciplined for it. Although Franks disputes saying to Hubble "I'm going to pretend like I didn't hear that," he does not dispute that the incident occurred and he was admonished. Nor does he dispute that even after Mayor Hubble

directed him to stop letting his grandson use the mower, a witness reported seeing Franks' grandson using it again.

Second, Franks called village resident Frank Lunsford a liar in front of Hubble. This incident occurred after Franks entered Hubble's office without being invited, thereby interrupting a meeting involving Hubble and Lunsford. The parties disagree over the tone with which Franks called Lunsford a liar. Nonetheless, Franks does not deny that he called Lunsford a liar, nor does he deny entering Hubble's office without permission.

Third, Franks confronted a village bus driver who had complained about his work. For this altercation, Franks was disciplined again by Hubble. Franks notes that the bus driver was not a village employee, and that he was written up for the incident under a rule governing insubordination arising from dealings with village employees. However, Franks does not deny that the confrontation occurred.

Finally, Franks became upset, or, in his words, "animated" at a finance committee meeting over Mayor Hubble's plan to institute a time clock. He admits that the attendees of the meeting probably thought he was angry.

In summary, the undisputed evidence shows that Franks was repeatedly insubordinate and unprofessional with Mayor Hubble and others. These are legitimate non-discriminatory reasons for terminating Franks. *Fullen v. City of Columbus,* 51 F. App'x 601, 606 (6th Cir. 2013) ("We have repeatedly held that insubordination may constitute a legitimate, nondiscriminatory reason for adverse action." (citations omitted)).

Moreover, Franks has failed to demonstrate that defendants' stated reasons for his termination were pretextual. In order to show pretext, a plaintiff must establish a genuine issue of material fact that the stated reasons for termination were false. *Ohio Univ.*, 887 N.E.2d at

424. Franks has not done so. To the extent Franks disputes these accounts of insubordination and unprofessionalism, he disputes immaterial aspects—such as whether his tone was "polite" when accusing someone of lying—rather than the material aspects of the incidents. Therefore, Franks has failed to meet his burden to show pretext.

## IV.

For these reasons, we affirm the judgment of the district court.

RICE, District Judge, dissenting.

I agree with the majority that Defendants met their burden at the second stage of the burden-shifting analysis to produce legitimate, nondiscriminatory reasons for terminating Franks's employment. Franks argues that Defendants failed to do so because there are contradictions between Defendants' evidence of insubordination and the testimony he gave describing the same incidents. Franks misunderstands the Defendants' burden at the second stage of the burden-shifting analysis. It is "merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F. 3d 576 (6th Cir. 2009). Defendants satisfied this burden by *producing* evidence (whether true or not) that Franks defied Mayor Hubble's instructions and continued to allow his minor grandson to perform unauthorized work, called a Village resident a liar, stated that he would refuse to use a time clock or perform his work duties if the Village implemented a time clock, and told the bus driver to bypass the chain of command and ask him directly about tree trimming. These incidents satisfy Defendants' burden of production, as incidents of "insubordination can constitute legitimate reasons for termination." *Arnold v. Marous Bros. Const., Inc.*, 211 F. App'x 377 (6th Cir. 2006) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994)).

Once the employer has produced a legitimate, non-discriminatory reason for terminating the plaintiff's employment, the burden shifts back to the plaintiff "to show that the employer's reason was merely a pretext for unlawful discrimination." *Peters v. Lincoln Elec. Co*, 285 F.3d 456, 470 (6th Cir. 2002). A plaintiff may establish pretext by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the

employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

I also agree with the majority regarding Franks's inability to present a genuine issue of <u>material</u> fact about two of the alleged incidents of insubordination: the mowing incident and the confrontation with Lunsford. As the majority notes, it is irrelevant whether or not Franks actually stated "I'm going to pretend like I didn't hear that" in response to Mayor Hubble telling him not to allow his grandson to operate the Village's mowing equipment. Franks argues that he never said it, but his argument avoids the actual reason for the finding of subordination: Franks continued to allow his grandson to perform work after Mayor Hubble told him not to. In this instance, Franks does not deny that he committed the actual act that resulted in the discipline.

Similarly, Franks criticizes the supposed "contradiction" between Defendants' version of his interaction with Lunsford ("spitting mad and red faced") and his version ("polite"). As the majority notes, Franks does not deny that he came into Mayor Hubble's office and called Lunsford a liar.

Franks did, however, flatly deny telling the bus driver to bypass the Village council and come directly to him about tree trimming. He also denied refusing to use a time clock, or making the other insubordinate statements attributed to him at the Finance Committee meeting where the implementation of the time clock was discussed. ("The only thing I asked was who was going to call me out. That's the only thing I asked. And I thought it was very reasonable.") The Village Clerk, Michelle Crowe, stated in her deposition that she could not remember any of the conduct at the Financing Meeting happening that formed the basis for Franks's discipline.

Thus, with two of the incidents in question, there were genuine disputes of material fact over what was said that formed the basis for the insubordination and, therefore, whether the allegedly insubordinate conduct occurred. The district court and the majority incorrectly state these disputes were not material, and that Franks admitted that all of the incidents actually occurred while merely discounting their severity. At the summary judgment stage, Franks, as the nonmoving party, was entitled to have this evidence assumed as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Based on these genuine issues of material fact, a reasonable jury could determine that Franks was not insubordinate during the tree-trimming incident, or that he did not engage in the behavior that the Village determined was insubordinate at the finance meeting. Pointing to these four incidents, Defendants claim that "Franks was fired because of his inappropriate conduct and escalating insubordination." (Doc. #32 at 18.) However, the genuine issues of material fact provide some support for a reasonable jury to conclude that at least two of the four "proffered reasons" that Defendants pointed to as justification for terminating Franks "had no basis in fact," or that the four incidents were "insufficient to motivate" the termination. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Either alternative satisfies the pretext requirement for sending Franks's case to a jury. *Id.*

Franks also argues that "Mayor Hubble engaged in numerous incidents of harassment" directed at him "because of his age" to support his inferential case for age discrimination. Appellant Br. at 27. Only one of the alleged incidents of "harassment" even concerns Franks's age, an interaction with Mayor Hubble after a council meeting. According to Franks, Mayor Hubble "she said we would really like for you to retire. She told me she had big projects that she

wanted to accomplish and she didn't think I could do those." During the same conversation, Mayor Hubble also said "if you retire we'll give you a big party," and told Franks that after retirement he could go work on his family's farm. According to Franks, after this conversation, they set up a meeting with some other people to discuss when Franks could retire.

Mayor Hubble denies that she stated that Franks wouldn't be able to do a particular job. Accepting Franks's version as true, however, a reasonable jury might conclude that some degree of age-based animus motivated his subsequent dismissal, based on Mayor Hubble's remark that there was work that Franks could not perform while she simultaneously urged him to retire. In short, a jury could conclude that his employer believed that Franks was too old to do certain work. Franks and Mayor Hubble present conflicting accounts of this exchange, which is material to Franks's inferential case of age discrimination. The district court accepted Mayor Hubble's statement that she was referring to a contracting project as true.

As the non-movant on summary judgment, however, Franks is entitled to have his evidence believed, and "all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, a genuine issue of material fact exists that should have precluded granting summary judgment in favor of Defendants on Franks's age discrimination claim.

Several factors make it tempting to doubt Franks's version of events. His case seems weak, his grievances appear exaggerated (for example, characterizing the interaction with Mayor Hubble as "numerous incidents" of age-related "harassment"), and he comes across in the record as stubborn and difficult to work with. Nevertheless, on summary judgment, these considerations should play no part in the analysis, because his credibility is not at issue.

"Credibility determinations [and] the weighing of the evidence" are the job of the jury, not a judge deciding a motion for summary judgment. *Anderson,* 477 U.S. at 255. The district court and the majority credited Defendants' version of events, in spite of the genuine issues of material fact in the record. Because I would reverse the decision of the district court and remand Franks's case for trial on his state law age discrimination claim, I respectfully dissent.