RICE, District Judge,
dissenting.
I agree with the majority that Defendants met their burden at the second stage of the burden-shifting analysis to produce legitimate, nondiscriminatory reasons for terminating Franks’s employment. Franks argues that Defendants failed to do so because there are contradictions between Defendants’ evidence of insubordination and the testimony he gave describing the same incidents. Franks misunderstands the Defendants’ burden at the second stage of the burden-shifting analysis. It is “merely a burden of production, not of persuasion, and it does not involve a credibility assessment.” Upshaw v. Ford Motor Co., 576 F.3d 576 (6th Cir.2009). Defendants satisfied this burden by producing evidence (whether true or not) that Franks defied Mayor Hubble’s instructions and continued to allow his minor grandson to perform unauthorized work, called a Village resident a liar, stated that he would refuse to use a time clock or perform his work duties if the Village implemented a time clock, and told the. bus driver to bypass the chain of command and ask him directly about tree trimming. These incidents satisfy Defendants’ burden of production, as incidents of “insubordination can constitute legitimate reasons for termination.” Arnold v. Marous Bros. Const., Inc., 211 Fed.Appx. 377 (6th Cir.2006) (citing Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir.1994)).
Once the employer has produced a legitimate, non-discriminatory reason for terminating the plaintiffs employment, the burden shifts back to the plaintiff “to show that the employer’s reason was merely a pretext for unlawful discrimination.” Peters v. Lincoln Elec. Co., 285 F.3d 456, 470 (6th Cir.2002). A plaintiff may establish pretext by showing “(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer’s action, or (3) that they were insufficient to motivate the employer’s action.” Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir.2009).
I also agree with the majority regarding Franks’s inability to present a genuine issue of material fact about two of the alleged incidents of insubordination: the mowing incident and the confrontation with Lunsford. As the majority notes, it is irrelevant whether or not Franks actually stated “I’m going to pretend like I didn’t hear that” in response to Mayor Hubble telling him not to allow his grandson to operate the Village’s mowing equipment. Franks argues that he never said it, but his argument avoids the actual reason for the finding of subordination: Franks continued to allow his grandson to perform work after Mayor Hubble told him not to. In this instance, Franks does not deny that he committed the actual act that resulted in the discipline.
Similarly, Franks criticizes the supposed “contradiction” between Defendants’ version of his interaction with Lunsford (“spitting mad and red faced”) and his version (“polite”). As the majority notes, Franks does not deny that he came into Mayor Hubble’s office and called Lunsford a liar.
Franks did, however, flatly deny telling the bus driver to bypass the Village council *540 and come directly to him about tree trimming. He also denied refusing to use a time clock, or making the other insubordinate statements attributed to him at the Finance Committee meeting where the implementation of the time clock was discussed. (“The only thing I asked was who was going to call me out. That’s the only thing I asked. And I thought it was very reasonable.”) The Village Clerk, Michelle Crowe, stated in her deposition that she could not remember any of the conduct at the Financing Meeting happening that formed the basis for Franks’s discipline.
Thus, with two of the incidents in question, there were genuine disputes of material fact over what was said that formed the basis for the insubordination and, therefore, whether the allegedly insubordinate conduct occurred. The district court and the majority incorrectly state these disputes were not material, and that Franks admitted that all of the incidents actually occurred while merely discounting their severity. At the summary judgment stage, Franks, as the nonmoving party, was entitled to have this evidence assumed as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Based on these genuine issues of material fact, a reasonable jury could determine that Franks was not insubordinate during the tree-trimming incident, or that he did not engage in the behavior that the Village determined was insubordinate at the finance meeting. Pointing to these four incidents, Defendants claim that “Franks was fired because of his inappropriate conduct and escalating insubordination.” (Doc. # 32 at 18.) However, the genuine issues of material fact provide some support for a reasonable jury to conclude that at least two of the four “proffered reasons” that Defendants pointed to as justification for terminating Franks “had no basis in fact,” or that the four incidents were “insufficient to motivate” the termination. Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir.2009). Either alternative satisfies the pretext requirement for sending Franks’s case to a jury. Id.
Franks also argues that “Mayor Hubble engaged in numerous incidents of harassment” directed at him “because of his age” to support his inferential case for age discrimination. Appellant Br. at 27. Only one of the alleged incidents of “harassment” even concerns Franks’s age, an interaction with Mayor Hubble after a council meeting. According to Franks, Mayor Hubble “she said we would really like for you to retire. She told me she had big projects that she wanted to accomplish and she didn’t think I could do those.” During the same conversation, Mayor Hubble also said “if you retire we’ll give you a big party,” and told Franks that after retirement he could go work on his family’s farm. According to Franks, after this conversation, they set up a meeting with some other people to discuss when Franks could retire.
Mayor Hubble denies that she stated that Franks wouldn’t be able to do a particular job. Accepting Franks’s version as true, however, a reasonable jury might conclude that some degree of age-based animus motivated his subsequent dismissal, based on Mayor Hubble’s remark that there was work that Franks could not perform while she simultaneously urged him to retire. In short, a jury could conclude that his employer believed that Franks was too old to do certain work. Franks and Mayor Hubble present conflicting accounts of this exchange, which is material to Franks’s inferential case of age discrimination. The district court accepted Mayor Hubble’s statement that she was referring to a contracting project as true.
*541 As the non-movant on summary judgment, however, Franks is entitled to have his evidence believed, and “all justifiable inferences are to be drawn in his favor.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, a genuine issue of material fact exists that should have precluded granting summary judgment in favor of Defendants on Franks’s age discrimination claim.
Several factors make it tempting to doubt Franks’s version of events. His case seems weak, his grievances appear exaggerated (for example, characterizing the interaction with Mayor Hubble as “numerous incidents” of age-related “harassment”), and he comes across in the record as stubborn and difficult to work with. Nevertheless, on summary judgment, these considerations should play no part in the analysis, because his credibility is not at issue. “Credibility determinations [and] the weighing of the evidence” are the job of the jury, not a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S.Ct. 2505. The district court and the majority credited Defendants’ version of events, in spite of the genuine issues of material fact in the record. Because I would reverse the decision of the district court and remand Franks’s case for trial on his state law age discrimination claim, I respectfully dissent.